# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

v.

## Joseph F. CONOVER
### Seaman (E-3), U.S. Coast Guard

## CGCMG 0198

## Docket No.  1217

## 28 July 2005

General Court-Martial convened by Commander, Maintenance and Logistics Command Atlantic.  Tried at Norfolk, Virginia, on 15 April 2004.

| | |
|---|---|
| Military Judge: | CAPT Sharon W. Fijalka, USCG |
| Trial Counsel: | LT Patrick M. Flynn, USCG |
| Assistant Trial Counsel: | LCDR Monica L. Lombardi, USCG |
| Detailed Defense Counsel: | LT Diane M. Croff, USCGR |
| Assistant Defense Counsel: | LT Steve Chiappetta, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LCDR John S. Luce, USCG |

### BEFORE
### PANEL TEN
### BAUM, McCLELLAND[*], & FELICETTI
Appellate Military Judges

BAUM, Chief Judge:

Appellant was tried by general court-martial, military judge alone.  Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of the following offenses: three specifications of wrongful use of marijuana, one specification of wrongful distribution of marijuana, one specification of wrongful use of cocaine, and one specification of wrongful distribution of Oxycontin, all in violation of Article 112a, Uniform Code of Military Justice (UCMJ); three specifications of carnal knowledge in violation of Article 120, UCMJ; one specification of assaulting a petty

---

[*] Judge McClelland did not participate in this decision.

officer in violation of Article 128, UCMJ; and one specification of violating 18 U.S.C. § 2423 by knowingly transporting a person under the age of eighteen from North Carolina to Virginia to engage in sexual activity, one specification of wrongfully and falsely altering a U.S. Armed Forces identification card, one specification of committing an indecent act on the body of a female under sixteen years of age, two specifications of breaking restriction, and two specifications of unlawfully entering the berthing room of a female seaman, all in violation of Article 134, UCMJ. The military judge sentenced Appellant to a bad-conduct discharge, confinement for sixty-six months, and reduction to E-1. The Convening Authority approved the sentence as adjudged, but, as required by the pretrial agreement, suspended all confinement in excess of twenty-four months. However, departing from the language of the agreement, which allowed suspension "for the period of confinement plus twelve (12) months from the date the accused is released from confinement," the Convening Authority stated that the confinement in excess of twenty-four months "is suspended for twelve months from the date the accused is released from confinement."

Appellant initially assigned five errors before this Court:

I. THE MILITARY JUDGE ERRED IN ACCEPTING APPELLANT'S PLEA TO THE OFFENSE OF VIOLATING 18 U.S.C. § 2423 AFTER IT BECAME APPARENT THAT THE STATUTORY BASIS FOR THE SPECIFICATION DIFFERED FROM THE OFFENSE DEVELOPED BY THE MILITARY JUDGE'S PLEA INQUIRY, AND THAT THE FACTS ELICITED FROM APPELLANT DO NOT SUPPORT THE INTENT ELEMENT OF THE OFFENSE;

II. THE SPECIFICATION UNDER CHARGE IV FAILS TO ALLEGE THAT THE SEXUAL ACTIVITY WAS CRIMINAL AND FAILS TO ALLEGE INTENT;

III. THE MILITARY JUDGE FAILED TO APPLY ALL THE FACTORS OUTLINED IN *UNITED STATES V. QUIROZ*, 55 M.J. 334 (C.A.A.F. 2001), AND, THUS, ERRED IN FINDING THAT SPECIFICATION TWO OF CHARGE II AND THE SPECIFICATION UNDER CHARGE IV DID NOT CONSTITUTE AN UNREASONABLE MULTIPLICATION OF CHARGES;

IV. THE MILITARY JUDGE ABUSED HER DISCRETION IN ADMITTING PROSECUTION EXHIBIT 3 OVER DEFENSE OBJECTION; AND

IV(a). THE MILITARY JUDGE COMMITTED PLAIN ERROR BY ADMITTING AND CONSIDERING PROSECUTION EXHIBIT 3, WHICH WAS IMPROPER EVIDENCE IN AGGRAVATION.

The Government concedes that Appellant's plea to the specification under Charge IV (a violation of 18 U.S.C. § 2423) was improvident, and we agree, so this charge will be dismissed and the sentence reassessed. Assignments II and III are moot, once the sentence is reassessed, given the Government's concession on assignment I. Assignment of error IV will be addressed. Assignment IV(a) is moot in light of our decision on assignment IV.

## Assignment of Error IV

Assignment of error IV asserts that the military judge erred in admitting Prosecution Exhibit 3 over defense counsel's objection at the sentencing stage of trial. It is commonly stated that a military judge's evidentiary ruling is reviewed for abuse of discretion, and that reversal is required for an abuse of discretion if the military judge's findings of fact are clearly erroneous or if the decision is influenced by an erroneous view of the law. *United States v. Owens*, 51 M.J. 204 (C.A.A.F. 1999).

This Court, however, is not limited to an abuse of discretion standard because we can assess a military judge's evidentiary ruling *de novo* pursuant to our Article 66(c), UCMJ, powers. *United States v. Olean,* 56 M.J. 594, 598 (C.G.Ct.Crim.App. 2001); *see also*, *United States v. Bridges,* 58 M.J. 540, 546 (C.G.Ct.Crim.App. 2003). By either standard, we have determined that the military judge erred in admitting Prosecution Exhibit 3.

Prosecution Exhibit 3 consists of twenty-one pages of brig "Work and Training Reports" NAVPERS 1640/10 (Rev. 11-86). The reports cover some of the period

3

Appellant was in pretrial confinement from 5 December 2003 to 15 April 2004. There are significant gaps, however, with no reports from 5-11 December 2003, 2-11 January 2004, 17 January to 9 February, 17-28 February, 6-8 March, 13-16 March and 6-14 April. Some periods of time are also covered by two separate brig reports.

Each report is a one page document covering a period of three to five days. It appears that various brig personnel check blocks and write comments on the printed form. The form covers ten broad topics such as discipline, behavior traits, military appearance, and personality. Some of the topics, such as discipline, reflect fact-based observations while others invite opinions. For example, brig officials may check blocks indicating the detainee is "moody" or "exceptionally pleasant and cheerful." On just over half of the forms in Prosecution Exhibit 3, the "motivation" and "productivity" blocks have been crossed out.

Defense counsel made a timely objection to admission of these documents "on hearsay grounds," stating, "I don't believe they're service record documents." R. at 169-170. The reference to service record documents is relevant since Appellant agreed in the pretrial agreement (PTA) to waive any objections to the admission of service record documents based on the grounds of foundation, hearsay, or authenticity.

The trial counsel argued that Prosecution Exhibit 3 was a personnel record and should be covered by the waiver clause in the PTA, but the military judge disagreed. Trial counsel argued, alternatively, that the documents were public records under M.R.E. 803(8). R. at 170-71. The military judge, however, admitted the documents without relying on the M.R.E. 803(8) public records exception, stating instead, "I agree they're basically a business record kept in the ordinary course … I think the brig is required to keep them." R. at 171.

As a threshold matter, we agree with the military judge's ruling that the brig forms are not "service record documents" covered by the PTA's waiver clause. Chapter 4 § D of COMDTINST M5810.1D, Military Justice Manual, provides the service

regulation concerning personnel records of the accused at sentencing.  The regulation states:

> Personnel records of the accused include all those records made and maintained in accordance with the Coast Guard Personnel Manual, COMDTINST M1000.6 (series); Source Data Automation (SDA) II User Manual, HRSICINST M5231.2 (series); Personnel & Pay Procedures Manual, HRSICINST M1000.2 (series); and the Military Personnel Data Records (PDR) System, COMDTINST M1080.10 (series) that reflect the past military efficiency, conduct, performance, and history of the accused.

The Coast Guard's COMDTINST M1000.6A, Personnel Manual, mentions a "Prisoner Evaluation Report," NAVPERS 1640/13.  This report, however, has a different title and slightly different number from the form used to evaluate Appellant during his pretrial confinement.  Additionally, the Personnel Manual states that NAVPERS 1640/13 is prepared annually for prisoners in long-term confinement unless the convening or reviewing authority requests additional reports.  Personnel Manual, Chapter 8 § F.6.d.5.

The documents admitted at trial, therefore, were not made or maintained in accordance with any of the applicable Coast Guard regulations, and thus were not personnel or service record documents.  Accordingly, the waiver of objection provision under the PTA was inapplicable.

Appellant and the Government disagree upon which hearsay exception the military judge used to admit Prosecution Exhibit 3 over the defense counsel's hearsay objection.  The Government's position is that the exhibit was admitted as a public record in accordance with the trial counsel's argument.  We, however, give far more weight to the military judge's actual words in the ruling, "I agree they're basically a business record kept in the ordinary course."  R. at 171.  We find that the documents were admitted, over objection, as a record of regularly conducted activity under M.R.E. 803(6).  This may be the correct basis for admitting these types of records since M.R.E. 803(8) excludes from its coverage many reports by personnel acting in a law enforcement

capacity and some brig forms contain the type of opinions explicitly allowed under M.R.E. 803(6) which states:

> The following [is] not excluded by the hearsay rule…
>
> …
>
> *Records of regularly conducted activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, *all as shown by the testimony of the custodian or other qualified witness,* unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

M.R.E. 803(6) (emphasis added).

As the Government concedes, however, there is no evidence in the record to establish that Prosecution Exhibit 3 was a record of regularly conducted activity under M.R.E. 803(6). No custodian testified as indicated in the rule. If anything, the significant time gaps in Prosecution Exhibit 3, duplicative entries for some time periods, and crossed-out evaluation blocks on some forms bring into question the regularity of the asserted business practice. These meager, yet undisputed, facts also tend to bring into question the circumstances surrounding the preparation of these, possibly optional, brig forms. It was, therefore, error for the military judge to admit these documents as business records without requiring the Government to present foundational evidence establishing that they met the requirements of that exception to the hearsay rule as set forth in M.R.E 803(6). We reach this conclusion on both a *de novo* review and on an abuse of discretion analysis. Given the negative information in some of the brig reports and trial counsel's extensive use of them in argument, we find the error prejudicial to Appellant and will reassess the sentence in light of this error.

6

**Supplemental Assignments**

While the record of trial was being reviewed by this Court, the Convening Authority, who is a general court-martial authority, vacated the suspended forty-two months of confinement. That action and the special court-martial hearing officer's report, which was relied upon for the vacation, have been forwarded to the Court for inclusion in the record. Appellant has assigned three supplemental errors challenging the vacation action and the hearing report:

> V. THE CONVENING AUTHORITY DID NOT HAVE THE POWER TO VACATE THE SUSPENSION BECAUSE THE ASSERTED MISCONDUCT DID NOT OCCUR WITHIN THE PROBATIONARY PERIOD;

> VI. THE SPECIAL COURT-MARTIAL CONVENING AUTHORITY, WHO CONDUCTED THE VACATION HEARING, MADE NO FINDINGS OF FACT WITH RESPECT TO ANY MISCONDUCT THE APPELLANT MAY HAVE COMMITTED AND, AS A RESULT, THE GENERAL COURT-MARTIAL CONVENING AUTHORITY'S FINDING THAT APPELLANT COMMITTED MISCONDUCT WHICH WARRANTED VACATION OF THE SUSPENDED PORTION OF THE SENTENCE WAS WITHOUT A PROPER BASIS; AND

> VII. THE HEARING OFFICER SHOULD BE NEUTRAL AND DETACHED, AND THE SPECIAL COURT-MARTIAL CONVENING AUTHORITY HEARING OFFICER DID NOT MEET THAT REQUIREMENT.

The hearing officer's report did not comply with the requirements of Rule for Courts-Martial (R.C.M.)1109, Manual for Courts-Martial, United States, (2002 ed.), as conceded by the Government. Consequently, the Government agrees with Appellant that the vacation action must be set aside and the record returned to the General Court-Martial Authority for further action as deemed appropriate by that authority. Oral argument on assignments V and VII was held on 28 June 2005, as requested by Appellant, and those assignments will be addressed.

**Assignment V**

As indicated at the outset of this opinion, the Convening Authority in his action stated that confinement in excess of twenty-four months "is suspended for twelve months from the date the accused is released from confinement." Since Appellant has yet to be released from confinement, the asserted acts of misconduct prompting vacation of the suspension occurred during confinement. Appellant argues that the suspension and its probation period do not commence until his release from confinement. For that reason, Appellant contends that there was no suspension to vacate at the time the General Court-Martial Authority purported to take that action, and, under the terms of R.C.M. 1109(b)(1), a vacation of suspension must be based on a violation of the conditions of suspension which occurs within the period of suspension.

In response, the Government asserts that the suspension commenced on the date of the Convening Authority's action and ends twelve months after Appellant's release from confinement. That contention is based on what the Government sees as the clear language of the action which states that "confinement in excess of twenty-four (24) months *is* suspended" (emphasis added), not will be suspended. According to the Government, Appellant's reading of the Convening Authority's action establishes "a period of suspension that springs into effect at a future date based on a condition subsequent (release from confinement) which is contrary to the plain language of the Convening Authority's Action and the Rules for Courts-Martial."

We disagree with the Government's viewpoint. Nothing in the R.C.M. that we can find prohibits a suspension from commencing on a future date, as advanced by Appellant. Moreover, such a suspension comports with our reading of the Convening Authority's action and what we see as its plain language, rather than with the Government's construction. If the Convening Authority intended to commence the suspension immediately rather than later, he should have utilized

the wording from the pretrial agreement which allowed suspension "for the period of confinement plus twelve (12) months from the date the accused is released from confinement."

Additionally, the Convening Authority had a nearly absolute right to grant clemency in his action. Article 60, UCMJ; R.C.M. 1107. While perhaps unlikely, it is possible the Convening Authority, as an act of clemency, intentionally limited Appellant's probation to a period less than the full duration authorized in the pretrial agreement. Clemency is the sole prerogative of the Convening Authority, so we construe the disputed provision in a way to avoid any possible intrusion by this Court upon a potential clemency decision by the Convening Authority.

We find that suspension of confinement had not gone into effect at the time Appellant purportedly violated its terms. Accordingly, the action to vacate was a nullity and is set aside for that reason. Even without this reason, the action would still have to be set aside because of the defective hearing officer's report as pointed out by the Government in response to supplemental assignment VI. Moreover, in light of the timing requirement for violations in R.C.M. 1109(b)(1) the purported violations occurring during confinement cannot be utilized as a basis for vacating a suspension that will commence upon Appellant's release from confinement, unless, as the Government argues, a misconduct clause of the PTA provides a basis for such action free from the limitations of R.C.M. 1109(b)(1). That question will have to be answered at a later time if the Convening Authority attempts to use that clause as a basis for vacating the suspension upon Appellant's release from confinement.

**Assignment VII**

In assignment VII, Appellant contends that the commanding officer of the confinement facility, who conducted the vacation hearing, was not qualified for that role. R.C.M. 1109(d)(1)(A) requires the hearing to be held personally by the

officer having special court-martial jurisdiction over Appellant. That requirement was met since the confinement facility's commanding officer, as a special court-martial convening authority, qualifies during Appellant's confinement as Appellant's hearing officer under the terms of Chapter 5 § E.2.b of the Military Justice Manual. Appellant asserts, however, that the hearing officer must also be neutral and detached, a qualification which Appellant contends is not met by the brig commanding officer. In response, the Government, citing *United States v. Connell*, 42 M.J. 462, 465 (C.A.A.F. 1995), acknowledges that the officer exercising general court-martial jurisdiction must be neutral and detached, but advises that the Court of Appeals for the Armed Forces has not addressed the question whether that requirement applies as well to the hearing officer.

According to the Government, the procedure for vacation of suspended sentences established in Article 72, UCMJ, and R.C.M. 1109 calls for that officer to perform a fact-gathering function, whereas, the general court-martial authority is the ultimate finder of fact and decision maker with respect to vacating a suspension. Accordingly, the Government submits that this Court should find the neutral and detached requirement applicable only to the general court-martial authority. In any event, according to the Government, there is nothing in the record to indicate that the Commanding Officer of the brig is not neutral and detached, that her actions, rather than being based on personal bias, should be seen as within her professional capacity to carry out her responsibility for good order and discipline.

Our decision with respect to whether there is, indeed, a requirement for the hearing officer to be neutral and detached is greatly influenced by *United States v. Miley*, 59 M.J. 300 (C.A.A.F. 2004). In that case, the Court of Appeals for the Armed Forces determined that the general court-martial authority is totally dependent on the facts gathered and found by the special court-martial hearing officer when vacating a suspension. In view of this limitation, the general court-martial authority cannot independently develop evidence on which to base the

vacation decision. Since that officer must be neutral and detached when carrying out the decision-making function, it is our conclusion that the hearing officer must also meet that requirement in compiling and reporting the facts on which the decision must be based. That does not mean a commanding officer is necessarily disqualified from filling the role of hearing officer, just as a commanding officer is not disqualified from acting as the neutral and detached officer reviewing pretrial confinement decisions. From our perspective, the same rationale applies to the commanding officer who conducts the vacation of suspension hearing.

In this case, we do not find evidence of record to indicate anything other than a professional basis for the brig commanding officer's actions. Accordingly, we do not find that she was disqualified from acting as hearing officer due to not being neutral and detached. Upon return of the record, however, should that officer act again as hearing officer, Appellant is free to develop the facts necessary to find otherwise and to make them a part of the record.

### Reassessment of Sentence

In light of the foregoing, the findings of guilty of charge IV and its specification are set aside. We now reassess the sentence in light of the guilty findings that have been set aside and the error in admitting Prosecution Exhibit 3 at the sentencing stage of trial. In so doing, we may affirm only so much of the sentence as we believe the military judge would have adjudged in the absence of the errors we are now correcting; if we are unable to determine what that would have been, we must order a rehearing on sentence. *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

The military judge considered the sole specification under Charge IV as part of specification 2 of Charge II for sentencing purposes. R. at 164-165. Charge IV and its specification, therefore, had no independent impact on the sentence imposed. We are also convinced that the military judge would not have imposed a lesser sentence if the error in admitting Prosecution Exhibit 3 had not been committed. Accordingly, upon

reassessment, we have determined that the sentence approved and partially suspended by the Convening Authority is appropriate and should be approved.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings of guilty of Charge IV and its specification are set aside. The remaining findings of guilty are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the remaining findings of guilty are affirmed. The sentence, upon reassessment, is deemed to be appropriate and should be approved. Accordingly, the sentence as approved and partially suspended below is affirmed.

Given the errors relating to the vacation of suspension, as previously discussed, that action is set aside and the record is returned to the General Court-Martial Convening Authority for action that he deems appropriate. Upon Appellant's release from confinement and the commencement of his suspended sentence, if another hearing is contemplated for the purpose of vacating the suspension, it cannot be based on misconduct committed while confined, unless the PTA's misconduct clause freed the Convening Authority from the limitations of R.C.M. 1109(b)(1). In that event, the legality and appropriateness of such a step will have to be litigated and ultimately decided at this level.

Judge FELICETTI concurs.



For the Court,


Roy Shannon Jr.
Clerk of the Court