# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

### No. 201600417

————————————

### UNITED STATES OF AMERICA
Appellee

v.

### JUSTIN C. SMITH
Lance Corporal (E-3), U.S. Marine Corps
Appellant

————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Major Mark D. Sameit, USMC.
Convening Authority: Commanding General, Marine Corps
Installations-West, Marine Corps Base, Camp Pendleton, CA.
Staff Judge Advocate's Recommendation: Lieutenant Colonel Todd
Enge, USMC.
For Appellant: Lieutenant Commander Ryan C. Mattina, JAGC,
USN.
For Appellee: Major David N. Roberts, USMCR; Lieutenant Jetti L.
Gibson, JAGC, USN.

————————————

Decided 31 July 2017

————————————

Before CAMPBELL, FULTON, and HUTCHISON, *Appellate Military Judges*

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

————————————

CAMPBELL, Senior Judge:

At an uncontested special court-martial, a military judge convicted the appellant of two specifications of conspiracy and one specification each of larceny, wire fraud, and identity theft—violations of Articles 81, 121, and

134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 921, and 934 (2012). The military judge sentenced the appellant to 350 days of confinement and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged, suspending all confinement in excess of eight months in accordance with a pretrial agreement.

The appellant contends the post-trial documents do not properly reflect that the military judge dismissed Charge III, Specification 1.[1] Alternatively, he avers that Charge III, Specifications 1 and 2 were an unreasonable multiplication of charges (UMC). Having considered the record of trial and the parties' submissions, we find that the post-trial documents accurately reflect the findings at trial, and we affirm those findings and the sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

In October 2015, the appellant and three other Marines agreed to steal money from recruits' Navy Federal Credit Union (NFCU) accounts. The other Marines' official duties provided them access to the recruits' personal information, including social security numbers, birth dates, and NFCU account numbers. The appellant used that information to gain access to 15 recruits' NFCU accounts and electronically transferred over $13,000.00 from their accounts into his own NFCU account.

Charge I, Specifications 1 and 2, respectively, alleged violations of Article 81, UCMJ, for conspiring to commit wire fraud under 18 U.S.C. § 1343,[2] and conspiring to commit larceny. Charge III, Specifications 1 and 2, respectively, alleged violations of Article 134, UCMJ, for committing wire fraud under 18 U.S.C. § 1343,[3] and for using the identification of another person to commit

---

[1] We summarily reject the appellant's application of this argument to Charge I, Specification 1, given that the CA properly stated that "[t]he military judge conditionally dismissed Specification 1 of Charge I without prejudice to ripen into prejudice upon completion of appellate review of the remaining charges in this case." Special Court-Martial Order No. 26-2016 of 22 Nov 2016 at 2 (citing Record at 54).

[2] To wit, that the appellant did, "on or about 13 October 2015," (1) "voluntarily and intentionally devise or participate in a scheme or plan to defraud another out of money; (2) that [he] did so with the intent to defraud; (3) that it was reasonably foreseeable that interstate wire communications would be used; and ( 4) that the wire communications were in fact used, in violation of 18 U.S. Code Section 1343 and 1349, and in order to effect the object of the conspiracy the [appellant] and co-conspirators did defraud at least $17,750.00 from [NFCU]." Charge Sheet.

[3] To wit, that the appellant did, "between on or about 9 October 2015 and on or about 25 December 2015, (1) voluntarily and intentionally devise or participate in a scheme or plan to defraud another out of money; (2) that the defendant did so with the intent to defraud; (3) that it was reasonably foreseeable that interstate wire

wire fraud per 18 U.S.C. § 1028A.[4] The following discussion ensued at the start of trial:

> MJ: Okay. At [a RULE FOR COURTS MARTIAL] 802, [MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012)] conference . . . just before we came on the record, we discussed . . . whether or not Charge I, Specification 1 and Charge III, Specification 1 are multiplicious in the way that they are charged in this case because the first element is the way the government has charged Charge I, Specification 1; and Charge III, Specification 1 is that [the appellant] voluntarily and intentionally participated in a scheme or plan, which is the same distinguishing element of a conspiracy.
>
> . . . The defense did indicate that they believed it was multiplicious in this case; if not multiplicious, UMC. The Court concurs with the defense. The government requested that Charge III, Spec[ification] 1 be conditionally dismissed.
>
> TC []: Charge I, Spec[ification] 1 --
>
> MJ: Charge III, Spec[ification] 1.
>
> The Court is going to conditionally dismiss Charge III, Spec[ification] 1 because the conspiracy would encompass a bit more information than Charge III, Spec[ification] 1[sic] of, specifically, who he came into the agreement with, whereas Charge III Spec[ification] 1 just says that he entered into an agreement with no specificity as to who that agreement is with. So the Court *will* conditionally dismiss Charge III, Spec[ification] 1 *upon the finding of guilty, as to all of the Charges and Specifications*.[5]

Having conducted a providence inquiry into all charges and specifications and found the appellant guilty of "all Charges and Specifications now

---

communications would be used; and (4) that the wire communications were in fact used, in violation of 18 U.S. Code Section 1343, a crime or offense not capital." *Id.*

[4] To wit, that the appellant did, "between on or about 9 October 2015 and on or about 25 December 2015, (1) knowingly transfer, possess, or use without legal authority a means of identification of another person; (2) the [appellant] knew that the means of identification belonged to a real person; and (3) the [appellant] did so during and in relation to violation of 18 U. S. Code Section 1343, in violation of 18 U.S. Code Section 1343, a crime or offense not capital." *Id.*

[5] Record at 4-5 ([sic] in original, emphasis added).

pending before this Court, in accordance with [his guilty] pleas," the military judge later readdressed Charge III, Specification 1, and UMC in general:

> During the break, we very briefly discussed [UMC], as we discussed before the trial. The defense indicated that they believed that Spec[ification]s 1 and 2 of Charge I should be merged and that *Specification 1 of Charge III should be conditionally dismissed*, all as [UMC]. *The government indicated that they still believe that Specification 1 of Charge III is separate and distinct* from Specification 1 of Charge I, and that the agreement to commit wire fraud happened on a separate date from the actual wire fraud.[6]

After further discussions with counsel, the military judge cited the UMC factors in *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001), and ruled:

> Specification 1 of Charge I should be conditionally dismissed. By conditionally dismissing Specification 1 of Charge I, that eliminates any sort of UMC where you're being convicted for two offenses for what's in effect for one single agreement. And additionally, that also eliminates the consideration of UMC where you have to have formed this plan in order to even get to be found guilty of wire fraud.

> So the Court orders that Specification 1 of Charge I hereby be dismissed, conditional upon the successful completion of appellate review of the remaining charges in this case.[7]

## II. DISCUSSION

### A. Charge III, Specification 1

Despite the government's concession,[8] the military judge did not dismiss Charge III, Specification 1. His initial comments reflect concern that the wire fraud specification, as drafted, and the conspiracy to commit wire fraud specification (Charge I, Specification 1) were multiplicious, or that combined they represented a UMC. But those comments state only the intent to revisit the issue after findings, not a ruling. By ultimately dismissing the conspiracy to commit wire fraud specification, the military judge mooted his initial concerns. The wire fraud offense presented no UMC issues with either the

---

[6] *Id*. at 51 (emphasis added).

[7] *Id*. at 53-54.

[8] "The United States thus concedes that the Record fails to support that the Military Judge's actions were not tantamount to dismissal of . . . Charge III, Specification 1, at the beginning of trial[.]" Appellee's Brief of 28 April 2017 at 12.

remaining conspiracy to commit larceny (Charge I, Specification 2) or larceny (Charge II, Specification 1).[9] Consequently, the court-martial order accurately reflects the findings at trial.

## B. Unreasonable multiplication of charges

As the military judge did not dismiss Charge III, Specification 1, we turn to the appellant's argument that it, a wire fraud offense, represents a UMC with the Charge III, Specification 2 "identity theft" offense.[10] "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." R.C.M. 307(c)(4). We review five non-exclusive factors from *Quiroz*, 55 M.J. at 338-39, to determine whether there is UMC. The non-exclusive factors are weighed together, and "one or more factors may be sufficiently compelling[.]" *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012).

(1) Whether the accused objected at trial:

The appellant did not argue at trial that the combination of wire fraud and identity theft was a UMC. This factor favors the government.

(2) Whether each charge and specification is aimed at distinctly separate criminal acts:

This factor may favor an appellant if "the acts in question were not discrete either in time, manner, or place." *United States v. Kilpatrick*, No. 9900149, 2000 CCA LEXIS 305, at *7, unpublished op. (N-M. Ct. Crim. App. 22 May 2000). For example, *Kilpatrick* involved charges of wire fraud by providing stolen credit card numbers over the phone to make purchases and "the fraudulent use of an unauthorized access device,"—providing the credit card numbers over the phone. *Id.* at *5.

However, the "mere unity of time and place" does not necessarily make charging "two offenses" unreasonable. *United States v. Letang*, No. 200000416, 2002 CCA LEXIS 49, at *4, unpublished op. (N-M. Ct. Crim. App. 7 Mar 2002). In *Letang*, even though counterfeit money was used to wrongfully obtain food, we found larceny and using counterfeit currency charges aimed at separate criminal acts. *Id.* at *2, 4. ("Stealing a meal is a serious offense . . . without the use of counterfeit currency. Passing counterfeit currency [is] a significant Federal violation . . . and may be accomplished without . . . larceny."). In a case specifically involving both identity and wire fraud, we also found that "identification fraud" under 10

---

[9] *See United States v. Brumfield*, No. 200301150, 2005 CCA LEXIS 321, at *11, unpublished op. (N-M. Ct. Crim. App. 12 Oct 2005) ("[W]e find no unreasonable multiplication of charges with regard to wire fraud and larceny.").

[10] Taken from the title of 18 U.S.C. § 1028A, "[a]ggravated identity theft."

U.S.C. § 1028(a)(7) and wire fraud were "not based on the same singular act," as "they were all steps necessary to achieve the overall goal" of "obtain[ing] illegal prescription opiates" in *United States v. Roberts*, No. 201200042, 2012 CCA LEXIS 705, at *1, 1 n.2, 8 unpublished op. (N-M. Ct. Crim. App. 26 Jul 2012) (per curiam).

Here, the appellant used a means of identification—recruits' social security numbers—to log into their NFCU accounts. He then executed a "member-to-member" transfer from each recruit's account to his own.[11] These circumstances are distinguishable from *Kilpatrick*, where ordering goods by telephone would not have been criminal wire fraud but for Kilpatrick providing other people's credit card numbers—the very scheme or plan constituting wire fraud *was* to use the unauthorized access devices, the other charged offense. The appellant, by contrast, executed the member-to-member transfers *after* using the recruits' social security numbers to log into their accounts. As in *Roberts*, the latter was a separate criminal act towards transferring money, so we find that this factor favors the government.

(3) Whether the number of charges and specifications misrepresent or exaggerate the appellant's criminality:

"When an ultimate offense is committed through separate means from which the appellant can also be charged, individually charging both the means and the ultimate offense can be evidence of UMC." *Roberts*, 2012 CCA LEXIS 705 at *9 (finding that charges of wire fraud and identification fraud "exaggerate[d Roberts'] criminality"). However, the appellant's use of the recruits' social security numbers, obtained from other Marines who misused their official positions, to access accounts before committing wire fraud was an egregious and criminal breach of trust. As the identity theft charge addresses misuse of *the recruits'* identification, beyond any effect *on NFCU* from the appellant's wire fraud, we thus find this factor equally balanced.

(4) Whether the number of charges and specifications unreasonably increase the appellant's punitive exposure:

Even with both charges, the punitive exposure remained the special court-martial jurisdictional maximum. So this factor favors the government.

(5) Whether there is any evidence of prosecutorial overreaching or abuse in the drafting of the charges:

Given that the appellant violated multiple federal statutes, we find no evidence in the record of prosecutorial overreach. We find that this factor favors the government.

---

[11] Record at 23.

On the whole, even assuming *arguendo* that the third factor favors the appellant, in balancing the *Quiroz* factors, we find the wire fraud and identity theft offenses in Charge III, Specifications 1 and 2 do not constitute a UMC.

Furthermore, even if the wire fraud and identity theft specifications were UMC, in reassessing the appellant's sentence after setting aside the conviction for one of the specifications, we would confidently and reliably determine that the appellant's sentence would still include 350 days' confinement and a bad-conduct discharge. *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013).

### III. CONCLUSION

The findings and sentence are affirmed.

Judge FULTON and Judge HUTCHISON concur.

For the Court



R.H. TROIDL
Clerk of Court